# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTOPHER DAVIS, # Y-20227, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 18-cv-1118-SMY |
| ) | |
| JOSEPH HARPER, ) | |
| STEPHANIE MILLER, ) | |
| JODI CARNES, ) | |
| JOHN DOES #1 & #2 (Physicians), ) | |
| JOHN DOE #3 (STA[1]), ) | |
| DOUG (STA IV), ) | |
| and KEVIN HAYMEN, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Christopher Davis, currently incarcerated at Vienna Correctional Center ("Vienna"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. His claims arose while he was confined at the Chester Mental Health Center ("CMHC") in 2016, having been found unfit to stand trial. (Doc. 1, p. 12). Plaintiff claims that he was illegally administered psychotropic medication, was subjected to retaliation for filing a previous lawsuit against staff at CMHC, and was subjected to excessive force.

Soon after Plaintiff filed this action on May 15, 2018, he filed a motion seeking to voluntarily dismiss the action and have the filing fee waived. (Doc. 9). The Court denied the motion, explaining that a filing fee is imposed at the time a lawsuit is filed and that Plaintiff would still owe the filing fee even if he dismissed the case. (Doc. 10). The Court delayed the

---

[1] "STA" stands for Security Therapy Aide, according to the Complaint. (Doc. 1, p. 3).

initial merits review of the Complaint pending Plaintiff's decision on whether or not to request dismissal, in light of the fact that the fee would not be waived. Upon denying Plaintiff's motion to reconsider that determination (Doc. 11), the Court directed Plaintiff to file a notice of voluntary dismissal no later than July 12, 2018 if he did not wish to proceed with the case. (Doc. 13). As of August 10, 2018, Plaintiff has not requested dismissal. Therefore, the Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner Complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000).

An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*,

631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that Plaintiff's claims survive threshold review under § 1915A. However, one claim shall be severed into a new action as improperly joined.

## **The Complaint**

Plaintiff presents the following allegations in the Complaint. Supervisors at CMHC "enforce and condone" a practice of administering emergency enforced medication ("EEM") to patients as a form of punishment. (Doc. 1, p. 12). On 2 occasions in 2016, Plaintiff was given EEM even though he did not meet any of the criteria allowing EEM – being combative, physically aggressive, or presenting an imminent risk to himself or others. Plaintiff was not under a court order directing the use of enforced medication. *Id.*

On May 19, 2016, Nurse Carnes illegally administered Haloperidol ("Haldol") and Lorazepam ("Ativan") to Plaintiff after obtaining authorization from John Doe Doctor #1, who never personally examined Plaintiff. (Doc. 1, pp. 13-14). Carnes' action violated the Mental Health Code and/or statute because Plaintiff was not exhibiting any behavior or threat to justify the involuntary medication. Plaintiff did not know what medication Carnes gave him until later, when it was discovered that he was having an allergic reaction to the Haloperidol/Haldol. (Doc. 1, p. 14).

After this incident, Plaintiff filed a formal written complaint to CMHC's Office of the Inspector General, but got no response. (Doc. 1, pp. 14-15). He then complained to the Illinois Guardianship and Advocacy Commission/Human Rights Authority ("HRA"). The HRA investigated and substantiated Plaintiff's formal complaint, finding Plaintiff did not meet the criteria for EEM and CMHC staff had violated the statute and Mental Health Code.[2] (Doc. 1, p. 15). Plaintiff continues to suffer from a side effect from the Haloperidol/Haldol. *Id.*

On June 2, 2016, Nurse Miller gave Plaintiff an unidentified psychotropic medication even though he did not meet the EEM criteria, no court order authorized the medication, and Plaintiff had not displayed any behavior to justify it. (Doc. 1, p. 16). John Doe Doctor #2 authorized the medication by phone without personally examining Plaintiff, although the doctor was on the premises and could have done so. John Doe #3 (a Security Therapy Aide) ordered Miller to administer the medication to Plaintiff as punishment. (Doc. 1, p. 17). During the incident, Plaintiff intentionally lay on the floor in view of a surveillance camera in order to show that he was being medicated as a punitive measure. *Id.*

Again, Plaintiff filed a formal internal complaint within CMHC that was never answered. He also complained to the HRA, which substantiated the complaint, finding CMHC staff violated Mental Health Codes, DHS policy, and statutes, as Plaintiff did not meet the criteria for forced medication.[3] (Doc. 1, p. 17).

Plaintiff includes CMHC Hospital Administrator Harper as a defendant because the medication practices he describes are a pattern at CMHC. (Doc. 1, pp. 17-18). Plaintiff states

---

[2] Plaintiff references the HRA Report # 16-110-9014, but did not include that document with his pleading. (Doc. 1, p. 15).
[3] For this incident, Plaintiff also references HRA Report # 16-110-9014. (Doc. 1, p. 17).

that in 2012 at CMHC, the "same incident" of forced medication happened to him twice.[4] At that time, the HRA substantiated his complaints, finding "multiple violations and red flags." (Doc. 1, p. 18). The HRA made recommendations to CMHC regarding the medication incidents and violations. Nonetheless, CMHC "continues to practice enforcing this punishment" despite being informed that their actions were unlawful. *Id.*

Plaintiff includes a claim (which he labels as Count 3) that at an unspecified time in 2016, Security Therapy Aide (STA IV) Doug and about 12 other STA's destroyed Plaintiff's legal work and personal pictures, in retaliation for a lawsuit Plaintiff had filed against CMHC personnel, *Davis v. Chester Mental Health Ctr., et al.*, Case No. 13-cv-1260-JPG. (Doc. 1, p. 19). Earlier on the day his room was destroyed, Plaintiff had a supervised telephone hearing on his case. During the call, Plaintiff mentioned the defendants' names and told the judge and his attorney about threats he had received from one defendant. *Id*. After this phone call, Doug and the other STA's entered Plaintiff's room and destroyed his property out of retaliation. Doug refused to take photographs of the room despite Plaintiff's request. (Doc. 1, p. 20).

Along with the Complaint, Plaintiff filed a "Motion to Strike" Count 3 from the Complaint, stating that he wishes to dismiss this claim and Defendant Doug from the action because he recently learned that he must seek relief in state court for a loss of property claim. (Doc. 4). The Motion to Strike will be granted below.

Finally, Plaintiff describes an incident on an unknown date in 2016 involving Kevin Haymen. (Doc 1, p. 21). Plaintiff "had words" with Haymen, and Haymen ordered Plaintiff to go to his room and close the door. *Id.* Plaintiff refused, saying Haymen couldn't force him to go because that would be forced seclusion. Haymen gave Plaintiff an "ultimatum" that if he did not

---

[4] Those 2012 incidents were the subject of Plaintiff's previous lawsuit in this Court, *Christopher Novus Davis v. Nurse Stephanie, et al.*, Case No. 16-cv-339-MJR, which was dismissed on May 2, 2016, as time-barred.

5

go to his room, he would be tied down to a bed in "FLR" (full leather restraints). Plaintiff knew this was unlawful, so he came out of his doorway and into view of the camera, where he sat on the floor to show he was not posing a threat or imminent risk and did not meet the criteria for FLR. Haymen and other staff put Plaintiff in a physical hold and placed him in 5-point restraints tied to a bed under Haymen's orders. They left Plaintiff in that condition for "hours" without justification. (Doc. 1, p. 21). Plaintiff claims that Haymen used the FLR as punishment. Further, while Plaintiff was immobilized in the FLR, Haymen abused Plaintiff by choking him. *Id.* Plaintiff alleges that this use of restraints is a practice of the facility and continues to be used by various staff, despite the fact that the HRA has "found many violations in the past and informed the facility" that restraints and medication are being imposed on patients who do not meet the criteria. *Id.*

Plaintiff seeks compensatory and punitive damages, noting that the incidents he describes are "a practice of the facility." (Doc. 1, p. 22).

## **Merits Review Pursuant to 28 U.S.C. § 1915A**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Fourteenth Amendment claim against Carnes, John Doe Doctor #1, and Harper, for forcibly administering psychotropic medications to Plaintiff as punishment and without justification on May 19, 2016;
>
> **Count 2:** Fourteenth Amendment claim against Miller, John Doe Doctor #2, STA John Doe #3, and Harper, for forcibly administering psychotropic

6

medications to Plaintiff as punishment and without justification on June 2, 2016;

**Count 3:** First Amendment retaliation claim against STA Doug, for destroying Plaintiff's personal property after learning that Plaintiff had sued CMHC staff in Case No. 13-cv-1260-JPG;

**Count 4:** Fourteenth Amendment claim against Haymen for using excessive force against Plaintiff in 2016, by placing Plaintiff in 5-point leather restraints as punishment, and choking him.

In addition to conducting the § 1915A merits review, the Court must consider whether, under Federal Rule of Civil Procedure 20, the surviving claims and parties may properly proceed in the same action. Each of these claims survives review under § 1915A, however, not all claims are properly joined in the same lawsuit.

**Severance of Claims and Defendants**

Under Rule 20(a)(2),[5] a "plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all." Wright, Miller, & Kane, 7 Federal Practice & Procedure Civ. 3d § 1655 (West 2017); FED. R. CIV. P. 20(a)(2). The Seventh Circuit instructs that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(b), (g)). Relatedly, the Seventh Circuit has recently warned district courts not to allow inmates "to flout the rules for joining claims and defendants, *see* FED. R. CIV. P. 18, 20, or to

---

[5] Rule 20, which governs joinder of parties in a single action, must be satisfied before the Court turns to the question of whether claims are properly joined under Rule 18. *Intercon Research Assoc's, Ltd. v. Dresser Industries, Inc.*, 696 F.2d 53, 57 (7th Cir. 1982); Wright, Miller, & Kane, 7 Federal Practice & Procedure Civil 3d § 1655 (West 2017). Rule 18 allows a plaintiff to join in one action as many claims as it has against an opposing party.

7

circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). *See also Wheeler v. Talbot*, 695 F. App'x 151, 152 (7th Cir. 2017) (district court should have severed unrelated and improperly joined claims or dismissed one of them). Accordingly, consistent with *George*, *Owens*, and *Wheeler*, improperly joined parties and/or claims shall be severed into new cases, given new case numbers, and assessed separate filing fees.

Plaintiff's Complaint contains three sets of unrelated claims against different defendants. Counts 1 and 2 both include Defendant Harper and involve the legal issue of whether Plaintiff was improperly given psychotropic medications. Those claims may thus proceed together for further consideration in this action.

Count 3 describes a distinct incident/transaction involving a single Defendant (STA Doug) and a legal issue (retaliation) unrelated to Counts 1 and 2. Because Plaintiff wishes to voluntarily dismiss Count 3 against Doug (Doc. 4), that claim will be dismissed without prejudice[6] rather than severed into a separate action.

Count 4 against Haymen for excessive force also represents a separate and distinct incident and legal issue from the involuntary medication incidents in Counts 1 and 2. Additionally, Count 4 is not tied to any of the defendants in Counts 1 or 2. Therefore, consistent with *George* and Federal Rule of Civil Procedure 21, Count 4 will be severed into a separate action. The severed case will be assigned a new case number and a new filing fee will be

---

[6] The dismissal without prejudice means that Plaintiff may refile his federal constitutional claim for retaliation in violation of the First Amendment (which is distinct from a state-law claim for loss/destruction of personal property) in a new case. However, the Court makes no comment on whether such a refiled claim would fall within the applicable 2-year statute of limitations; the Complaint does not reveal the date of the incident. **Error! Main Document Only.**For a § 1983 claim, Federal law relies on the State in which the action arose to determine the statute of limitations, by using that State's personal-injury statute. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Claims brought in Illinois under 42 U.S.C. § 1983 are subject to the two-year statute of limitations applicable to personal injury claims. 735 ILL. COMP. STAT. § 5/13-202.

assessed.

**Counts 1 and 2 – Forced Medication**

Haloperidol/Haldol is classified as an antipsychotic drug. Prescriber's Digital Reference, http://www.pdr.net/drug-summary/Haldol-haloperidol-942 (last visited July 20, 2018). Lorazepam/Ativan is indicated for anxiety and may be used as a sedative. http://www.pdr.net/drug-summary/Ativan-Injection-lorazepam-996#3 (last visited July 20, 2018). Plaintiff claims that he was given these and other unknown medications as punishment, without his consent, and that there was no emergency justification for the defendants to give him these drugs.

As the Seventh Circuit has observed: "forcing a person to ingest psychotropic drugs, under some circumstances, may violate that person's constitutional rights under the due process clause of the fourteenth amendment" . . . courts have "recogniz[ed] a liberty interest to refuse treatment with psychotropic drugs." *Chambers v. Ingram*, 858 F.2d 351, 359 (7th Cir. 1988) (collecting cases). However, courts also recognize "an 'emergency exception' . . . when the patient is an immediate threat to his own life or the safety of others." *Id.*

Echoing these findings, the Supreme Court in *Washington v. Harper*, 494 U.S. 210 (1990), held that a prisoner has "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Id.* at 221-22. That said, the "Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.* at 227. *See also Fuller v. Dillon*, 236 F.3d 876, 881-82 (7th Cir. 2001); *Sullivan v. Flannigan*, 8 F.3d 591 (7th Cir. 1993) (finding that decision to keep prison inmate on Haldol against his will

complied with due process requirements under *Harper*):

> *Harper* emphasized several aspects of an inmate's right to refuse drug treatment. First, to administer involuntary treatment the state must find that medication is in the prisoner's medical interest (independent of institutional concerns). 494 U.S. at 227, 110 S. Ct. at 1039. Second, the tribunal or panel that reviews a treating physician's decision to prescribe forced medication must exercise impartial and independent judgment, taking account of the inmate's best interest. *Id.* at 222, 233, 110 S. Ct. at 1036, 1042; *compare id.* at 250-53, 110 S. Ct. at 1051-53 (Stevens, J., dissenting). Third, the prisoner must be able to argue capably before a review tribunal that he does not need forced medication. *Id.* at 233, 110 S. Ct. at 1042. If the state failed to meet these requirements in a particular case, the prisoner could argue that he was denied *Harper's* protections.

*Sullivan*, 8 F.3d at 598.

Here, Plaintiff was not a convicted prison inmate at the time his claims arose. Rather, he was a pretrial detainee who had been committed to the care of the Illinois Department of Human Services after a court finding that he was unfit to stand trial on the criminal charges he was facing. As such, it appears that the Illinois Administrative Code provisions found at title 59, § 112.90, and 405 Illinois Compiled Statutes 5/2-107 and 5/2-107.1 governed the use of involuntarily-administered psychotropic medications for Plaintiff while he was a patient at the CMHC. Those procedures and Plaintiff's legal and clinical competence at the time to give informed consent will likely be relevant to the question of whether Plaintiff's constitutional due process rights were violated when he was given Haldol, Ativan, and the unknown psychotropic medications without his consent and without any court oversight or order.

Plaintiff's allegation that he did not exhibit any behavior or present any threat that would have warranted emergency use of medication must be taken as true at this juncture. *See Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011). Further factual development will be necessary to determine whether Plaintiff's constitutional rights were violated when he was involuntarily given antipsychotic and/or psychotropic medications on May 19, 2016 (Count 1) or June 2, 2016

(Count 2). However, at this early stage, the Complaint states a claim that survives review under § 1915A.

The Court notes that Harper (Hospital Administrator) may not have been personally involved in the decisions to administer medications to Plaintiff on May 19, 2016 or June 2, 2016, and he cannot be subject to liability based merely on his authority as administrator. *See Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (the doctrine of *respondeat superior* – supervisory liability – does not apply in § 1983 actions). However, Plaintiff alleges that Harper was aware of his subordinates' failure to comply with patients' rights to refuse medication, based on Plaintiff's 2012 complaints over 2 forced medication incidents and the HRA's finding that CMHC staff had violated the applicable statute and code. In light of these allegations, and Plaintiff's allegation that CHMC has continued to follow the same medication practices that were found to be improper, Harper could be held liable for misconduct on the part of the other defendants on the basis that he approved or condoned the misconduct, or turned a blind eye to it. *See Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001); *Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997); *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988).

For the above reasons, Plaintiff's Fourteenth Amendment claims for the forcible administration of psychotropic drugs without due process in **Count 1** against Carnes, John Doe Doctor #1, and Harper, and **Count 2** against Miller, John Doe Doctor #2, STA John Doe #3, and Harper, shall proceed for further review. However, Plaintiff must identify the unknown (John Doe) defendants by name before the Complaint may be served on them.

### Voluntary Dismissal of Count 3 – Retaliation

As noted above, Plaintiff's motion to strike the claim in Count 3 (Doc. 4), which he

characterizes as a loss of property claim, shall be granted. While Plaintiff also refers to this claim as "Count Four" or "Count 4" in parts of the motion (Doc. 4, pp. 1-2), it appears that he neglected to scratch out "Four" and replace it with "Three" in some places. Plaintiff's description of the claim as one for loss of property against Defendant Doug makes it clear that the motion is directed only at Count 3. Therefore, Count 3 (including the loss of property claim and the claim for unconstitutional retaliation in violation of the First Amendment) will be dismissed without prejudice.

**Count 4 – Excessive Force**

Because Plaintiff was a pretrial detainee while he was confined at CMHC in 2016, his "cruel and unusual punishment" claim against Haymen for the improper use of restraints and for choking him, arises under the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment. *See Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015); *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013). "[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). *Kingsley* established that for an excessive force claim brought by a detainee, the relevant question is whether the force used was objectively reasonable. The plaintiff is not required to prove that the defendant acted with the subjective intent to punish or inflict harm. *Kingsley*, 135 S. Ct. at 2472-74. *See also Bell v. Wolfish*, 441 U.S. 520, 561 (1979) (pretrial detainee may demonstrate a constitutional violation where a defendant's actions are not "rationally related to a legitimate nonpunitive governmental purpose" or where the actions "appear excessive in relation to that purpose").

Plaintiff's complaint allegations indicate that Haymen's use of 5-point restraints to immobilize Plaintiff by strapping him to a bed for "hours" in response to his passive resistance to

Haymen's order to shut himself in his room, may have been excessive in relation to Haymen's desire to have Plaintiff comply with his order.  Likewise, the Court cannot discern any rational purpose for Haymen to choke Plaintiff while he was restrained, as Plaintiff claims.  **Count 4** therefore withstands scrutiny under § 1915A.  As previously explained however, this claim is not properly joined in the same action with the claims in Counts 1 and 2.  Count 4 will therefore be severed into a separate case where service will be ordered after the new case number and judge assignment is made.

### Identification of Unknown Defendants

Where a prisoner's Complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009).  Therefore, Plaintiff will be allowed to proceed with his claims in Count 1 against the John Doe Doctor #1, and in Count 2 against the John Doe Doctor #2 and STA John Doe #3.  However, these defendants must be identified with particularity before service of the Complaint can be made on them.  In this case, Plaintiff may direct discovery requests aimed at identifying these unknown defendants to Defendant Harper.  Guidelines for discovery will be set by the United States Magistrate Judge.  Once the names of Defendants John Doe Doctor #1, John Doe Doctor #2 and STA John Doe #3 are discovered, Plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

### Pending Motions

Plaintiff's motion for recruitment of counsel (Doc. 3) is referred to the United States

Magistrate Judge for further consideration.

The motion to strike Count 3 from the Complaint (Doc. 4) is **GRANTED**. Count 3 shall be dismissed from the action without prejudice.

**Disposition**

**COUNT 3** is **DISMISSED** without prejudice pursuant to Plaintiff's motion (Doc. 4) to strike that claim from his Complaint. Defendant **DOUG** is dismissed from the action without prejudice.

**IT IS FURTHER ORDERED** that, pursuant to Federal Rule of Civil Procedure 20(a)(2), Plaintiff's excessive force claim (**COUNT 4**), which is unrelated to the claims in Counts 1 and 2, is **SEVERED** into a new case. That new case shall be: Claim against **KEVIN HAYMEN** for excessive force.

In the new case, the Clerk is **DIRECTED** to file the following documents:

    (1)    This Memorandum and Order
    (2)    The Original Complaint (Doc. 1)
    (3)    Plaintiff's motion to proceed *in forma pauperis* (Doc. 2)
    (4)    Plaintiff's motion for recruitment of counsel (Doc. 3)

Plaintiff **will be responsible for an additional $350.00 filing fee** in the new case.

Because this Memorandum and Order contains the §1915A merits review of the severed Count 4, an order may be entered to refer Count 4 to the magistrate judge and order service on Defendant Haymen in the severed case, as soon as the new case is opened and the judge assignment is made.

**IT IS FURTHER ORDERED** that the *<u>only claims remaining in this action are COUNT 1 and COUNT 2 against Defendants HARPER, MILLER, CARNES, JOHN DOE DOCTORS #1 and #2, and JOHN DOE STA #3</u>*, for forcibly medicating Plaintiff. This case shall now be captioned as: **CHRISTOPHER DAVIS, Plaintiff, vs. JOSEPH HARPER,**

**STEPHANIE MILLER, JODI CARNES, JOHN DOE DOCTORS #1 and #2, and JOHN DOE STA #3, Defendants.**

**IT IS FURTHER ORDERED** that Defendant **KEVIN HAYMEN** is **TERMINATED** from *this* action with prejudice.

As to **COUNTS 1 and 2**, which remain in the instant case, the Clerk of Court shall prepare for Defendants **HARPER, MILLER,** and **CARNES**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on Defendants **JOHN DOE DOCTORS #1 and #2, or JOHN DOE STA #3** until such time as Plaintiff has identified them by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Reona J. Daly** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3) and a plan for discovery aimed at identifying the unknown defendants with particularity.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Daly for disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 10, 2018**

                                                          s/ STACI M. YANDLE
                                                        United States District Judge