IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTOPHER DAVIS #Y20227, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 18-CV-1118-SMY |
| | ) |
| JOSEPH HARPER, et al, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Now pending before the Court is the Motion for Summary Judgment filed by Defendants Tom Biama, Joseph Harper, Ajit Trikha (Doc. 122), which Plaintiff Christopher Davis opposes (Docs. 143). The Court granted leave for Defendants to file a reply (Doc. 146). For the following reasons, the motion is **GRANTED in part** as to Defendant Harper only.

### Factual Background

The following material facts are undisputed unless otherwise noted[1]: Christopher Davis was found unfit to stand trial for robbery charges in Lake County, Illinois and sent to Chester Medical Health Center ("CMHC") for a year (Doc. 126, p. 2; Doc. 127, p. 1; Doc. 136, p. 14). During the relevant period in May and June 2016, Defendant Harper was the Hospital Administrator for CMHC (which is not a medical professional position and does not involve treating patients), Defendant Trikha was a doctor at CMHC, and Defendant Biama was a security therapy aid (Docs. 140, 140-1, 140-2).

---

[1] Defendants filed thousands of pages of Plaintiff's medical records that are not connected to the incidents on May 19, 2016 and June 2, 2016 that form the basis for this lawsuit. While the Court understands the need to make a full record, Defendants are encouraged to be more judicious in only filing documentation relevant to the summary judgment briefing before this Court.

Upon his arrival at CMHC, Davis had no court enforced medication order and no emergency enforced medications ("EEM") (Doc. 127, p. 2). His medical records indicate that he "had physical altercation with peers" and "exhibits aggressive behaviors" (Doc. 127, p. 2). According to Davis' declaration in opposition to summary judgment, he had a "personal safety plan in place indicating [his] directives for how CMHC staff were to handle [him] in an emergency situation," and he ranked the three available options as "(1) seclusion, (2) emergency medication, and (3) restraint" (Doc. 143-1 at ¶ 2). This comported with the CMHC policy, which allowed the administration of EEM to prevent a patient from causing "serious and *imminent* physical harm to self or others" (Doc. 125-3, p. 3) (Emphasis added).

The lack of deposition testimony and barebones affidavits submitted by Defendants made it difficult to formulate a narrative of how the EEM was administered to Davis. But the parties agree, and the medical records show, that Davis was involuntarily administered EEM on May 19, 2016, and June 2, 2016 (Doc. 131, pp. 1, 7; Doc. 133, pp. 34, 37). On these dates, a nurse indicated to Defendant Trikha that Plaintiff had lunged at another patient and taken a fighting stance, or was refusing to return to his room and threatening staff (Doc. 140-1 at ¶¶ 4-5). Defendant Trikha made a judgment that emergency medication was necessary based on these reports, but it is unclear who this nurse was or who administered the EEM (Doc. 140-1 at ¶ 6). It is also unclear whether Defendant Biama was present, noted any concerns to Defendant Trikha, or administered the EEM. And it is unclear as to the timing of when this judgment was rendered and when the EEM was administered (like whether a long time had elapsed). In any event, Davis contests this account of the incidents, as he declared that he was neither violent nor threatening on those dates (Doc. 143-1 at ¶¶ 3-9).

As a result of the involuntary administration of EEM on May 19 and June 2, 2016, Plaintiff declares that he has experienced physical difficulties that include abnormal vision (Doc. 143-1 at ¶ 10).

## Discussion

Davis filed the instant lawsuit pursuant to 42 U.S.C. § 1983 (Doc. 1). Following the initial screening (Doc. 15), Davis is proceeding on the following claims:

> Count 1: Fourteenth Amendment claim against Carnes, John Doe Doctor #1, and Harper, for forcibly administering psychotropic medications to Plaintiff as punishment and without justification on May 19, 2016;
>
> Count 2: Fourteenth Amendment claim against Miller, John Doe Doctor #2, STA John Doe #3[2], and Harper, for forcibly administering psychotropic medications to Plaintiff as punishment and without justification on June 2, 2016;

(Doc. 15, pp. 6-7).

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact or if the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004).

### Counts 1 and 2

As an initial matter, Plaintiff concedes that Defendant Harper was not sufficiently personally involved for liability and should be dismissed (Doc. 143, p. 2). The Court agrees. That

---

[2] These John Doe defendants were later substituted as Defendants Trikha and Biama (Docs. 78, 79).

leaves the question as to whether Defendants Trikha and Biama may be liable for the involuntary administration of EEM to Davis.

A person, even when detained against their will, retains "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Washington v. Harper,* 494 U.S. 210, 221 (1990). But this right must be balanced against the State's interest in maintaining safe facilities and its obligation to "take reasonable measures for the [detainees'] own safety." *Id.* at 225. "Due process allows a mentally ill inmate to be treated involuntarily with antipsychotic drugs where there is a determination that the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Riggins v. Nevada,* 504 U.S. 127, 134-35 (1992) (internal quotations omitted); *Washington,* 494 U.S. at 231 (medical professional may make decision to forcibly medicate without judicial decree). With respect to the medication administered, "[l]iability may be imposed only when the decision [to administer such medication] by the [medical] professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982).

Viewed in its entirety, the record is not sufficiently clear to support summary judgment. Davis contests Defendants' version of events and declares that he was neither violent nor agitated when he received the EEM. Additionally, other material questions are unresolved: who was the nurse who told Defendant Trikha about Plaintiff's behaviors? Were they based on first-hand observations? Did Defendant Trikha further investigate these reports? Who administered the EEM? Had Plaintiff already calmed down by that time? Was Defendant Biama present? Did he

administer the EEM? This matter must be tried, with a jury assessing the credibility of live witnesses and discerning a narrative that is lacking in the summary judgment record.[3]

## Qualified Immunity

Defendants Trikha and Biama also move for summary judgement based on qualified immunity, arguing that administration of the EEM did not violate clearly established rights. Governmental officials are protected from civil liability when performing discretionary functions under the doctrine of qualified immunity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *see also Alvarado v. Litscher,* 267 F.3d 648, 652 (7th Cir. 2001). For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Estate of Escobedo v. Bender,* 600 F.3d 770, 779 (7th Cir. 2010), quoting *Hope v. Pelzer,* 536 U.S. 730, 739 (2002). But the right of pretrial detainees like Davis to remain free of involuntarily administered medication (absent exigent institutional concerns) was clearly established at the time. *Harper,* 494 U.S. at 221. Accordingly, the claims asserted against Defendants Trikha and Biama are not barred by qualified immunity.

---

[3] Defendants initially raised a defense under the Prison Litigation Reform Act ("PLRA"), which provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The PLRA applies to a pretrial detainee like Plaintiff who was confined in a mental to health treatment facility. *Kalinowski v. Bond*, 358 F.3d 978, 979 (7th Cir. 2006) ("Pretrial detainees are 'prisoners' for purposes of the PLRA because they are in custody while 'accused of . . . violations of criminal law'"). Prisoners must make a "prior showing" of physical injury or the commission of a sexual act before recovering for these injuries. 42 U.S.C. § 1997e(e). But this limitation applies only to compensatory damages—not nominal damages, punitive damages, or injunctive relief. Not only does Plaintiff seek nominal damages for violation of his Constitutional rights with involuntary administration of the EEM medication, but Defendants conceded in their reply that, "Plaintiff's recently revealed vision issues are sufficient for the PLRA" (Doc. 146, p. 3). *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003) (nominal damages are "recognition of a violation of rights.") Accordingly, summary judgment will not be granted because of the PLRA's requirement of a physical injury.

**Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 122) is **GRANTED** on Counts 1 and 2 only with respect to Defendant Harper. The motion is **DENIED** with respect to Defendants Trikha and Biama on both counts. The Clerk of Court is **DIRECTED** to enter judgment accordingly at the conclusion of this case. By separate order, this case will be set for a status conference to select a firm trial date.

**IT IS SO ORDERED.**

**DATED: March 13, 2024**

**STACI M. YANDLE**
**United States District Judge**